Good afternoon. Illinois Appellate Court, 1st District Court is now in session. The 6th Division, the Honorable Justice Carl Anthony Walker presiding, case number 21-0848, People v. Avdic. And good afternoon, everyone. I'm Justice Walker and I have here with me today Justice Odin Johnson and Justice Taylor. And what I'd like to do is start by asking the lawyers if you could please introduce yourselves for the record. Good afternoon, Your Honors. My name is Ryan Levitt. I'm here with Damon Charonis on behalf of Appellant Javi Avdic. Okay, thank you, Mr. Levitt. Good morning. Assistant State's Attorney Noah Montague on behalf of the people. Okay, and thank you, Mr. Montague. And I'll start with you, Mr. Levitt. How much time will you need today and how much time do you want to reserve for rebuttal? I would ask for 20 minutes, 5 for rebuttal. Sure, we can do that. And Mr. Montague, will you need your entire 20 minutes? Hopefully not. Okay, well, you can take as much of it as you like. We're pretty flexible here. Okay. All right. So with that, we can go ahead and get started. We'll start with you, Mr. Levitt. All right. Thank you. May it please the Court, Counsel. We've raised a number of issues, of course, on Mr. Avdic's behalf. And the one I'd like to start with this afternoon, barring other suggestions, is the trial court's refusal to instruct the jury on a requested lesser-included offense of felony murder. So, before I dive further into it, there's two points of law I think are good to keep in the back of our minds as we go through this. And number one is, I think everyone agrees, the Illinois Supreme Court has repeatedly and consistently affirmed the fact that the underlying predicate of felony murder is, in fact, a lesser-included offense. And then number two, as the state correctly points out, the evidentiary showing needed to get that instruction is a very low bar. We all know it's just slight evidence. And that, as I read their brief, is the only objection that they made, that there wasn't slight evidence to warrant a robbery instruction. I think it's a very peculiar argument to make, given that it was the charge predicate in count 10 of the indictment. And on top of it, I mean, they make that argument that's set out on page 44 of their brief. But then the thing I really want to highlight this morning or this afternoon, when we go to the sufficiency challenge, I was re-reviewing their arguments about what they said with regard to the sufficiency of the evidence and why their case was proven beyond a reasonable doubt. And on page 57 and 58 of their brief, they talked extensively about the evidence in the record that supported a finding that Mr. Obdick was engaged in a robbery. And just to, I'm not going to go through, I counted no less than 25 references on those two pages to the word robbery. And they walked through the facts. And I'll highlight a few of them. They argued that Mr. Obdick planned the robbery. And over and over, they used the word robbery. They argue that Mr. Obdick chose $500 worth of marijuana as the proceeds for the robbery, which they then further argued was a significant enough amount that someone willing to do that must have at least contemplated the use of force, if not actual force for it. They argued that he chose the location for the robbery, that he invented a false ruse to facilitate the robbery, and even picked which co-defendant would carry out the ruse. The state argued that Mr. Obdick drove everyone to the robbery. They argued that he ordered his co-defendants out of the car. There was contestation about that, but that's their argument. And there was certainly some evidence in the record to support it. They argued that he was present on scene during the robbery, that he joined in the proceeds, in the split of the proceeds after the fact. And then, of course, in particular with his friend, Jeremy Lee, he had discussed in the past committing robberies. That's what they argued with respect to the sufficiency of the evidence. And argued, I won't quote it, but to paraphrase it, that there is more than sufficient evidence to prove he was engaged in a robbery beyond a reasonable doubt. So that's the argument for sufficiency. And when we come back to the lesser included offense, their position is that there is not even slight evidence of a robbery. I'm not sure what else to add to that. I mean, I don't find it to be a very plausible argument, to say the least. And I will further say the situation in a felony murder prosecution where the underlying predicate, where you have an evidentiary challenge to it, are situations where it's, as this court and other appellate courts in the state have talked about, where it's an all or nothing or either or situation. A good example I was thinking about today is like an alibi, right? Where if Mr. Obdick's defense was that he was in Mexico, he's either in Mexico or he's there committing a robbery. It's one or the other, right? He could either be believed or disbelieved. Another good example came from the state's citation to Eccles, 382 Ill App 3rd 309. And that was a case, which as I read it, it was a residential burglary. And I don't know if it was the only evidence, but in the opinion on appeal, it was certainly the crux of the state's case where a detective testified to what appeared to be an oral, unrecorded confession. And the defense was that it was fabricated, whether he lied or made it up or didn't remember, whatever it was, they disputed the veracity of the claim that the defendant confessed. So it was a situation, again, where either he confessed and admitted to the crime that led to the death or he made no admission and there was no evidence of guilt whatsoever. It's one of those either or all or nothing propositions. This certainly wasn't that. And as we laid out in our brief, the defense really focused on the issue of the lack of absence of force. But that's that's always how these cases go, right? Is there's competing views of the evidence? And that's why lessors exist. We also see it come up all the time in homicide. Counsel, let me ask you this. Now, you asked for the lesser included with respect to robbery. However, throughout your brief and my understanding of your argument below was your argument was centrally based on it being theft as opposed to robbery. Well, Justice Johnson, we argued we actually asked for three lessors in the trial court. We asked for just simple theft, theft by deception and robbery in the alternative. We think there was evidence to support submitting all of those to the jury on appeal. We haven't withdrawn those objections. And as you saw from the reply brief, there's certainly also slight evidence of theft by deception if Mr. Obdick's testimony was credited. Right. But the point is the reason we chose to I should say the reason we chose to focus on robbery and appeal in particular is because it's in black and white. It's black and white black letter law that the predicate, the named predicate is, in fact, a lesser included offense. So the only issue is whether or not there's slight evidence. Right. And that is something we have absolutely been arguing and most certainly stand on. The only other point with respect to the lesser I wanted to bring up was in its argument, the state focused singularly on Mr. Obdick's testimony. I think your honors are aware that's not the only evidence that's in the record, whether he was believed or not. And there were plenty of things he said that certainly supported an inference that he should have known or contemplated force, even though he consistently denied it. Well, so did the state's witnesses on cross-examination. And there was back and forth about terms like stain and lick and whether it meant just theft absent force or theft with force or there was back and forth about the gun and what he knew. And he certainly admitted to having been involved in the messages about bring a quote unquote poll, which is code for gun, but disputed the essentially the seriousness of that. So that's I was going to say it's a situation much like a homicide case. That's sort of what I was thinking about as I was preparing for this argument, where a defendant gets up and testifies that, you know, I can put a self-defense defense of self-defense for. So we're clear, though, Mr. Levitt, you mentioned that about the poll. The defendant never text that that was Tyler that text that to the defendant. It was never correct. It was it was someone named Jeremy Lee who had no involvement. He he was just another friend of Mr. objects who was sort of having this side conversation around him at the time. And he admitted as part of their there was just to be clear, too. He never even responded to that text message. Right. Well, that part of the text message. OK, go ahead. You can even just going to say, and even Mr. Leaf stated they never contemplated armed robberies in the past. They often use Mr. Object testified about counterfeit money and never actually use force, et cetera. But I was just going to say the last point I sort of had on this, barring other questions, was that in self-defense cases all the time, the defendant gets up and testifies to what, in their view, is a reasonable belief in the need to defend themselves and why they should be acquitted entirely. That doesn't mean you don't request the lesser on second degree if it's appropriate and give the option as long as there's slight evidence to find that belief unreasonable. And this is that sort of gray case, as I see it, where there's a lot of so that I'm clear. Robbery was also one of the initial charges that the state dropped. Correct. Count 10, I believe, if I remember correctly, it was specifically named as a predicate. Yes. OK, but in any event, just to close the loop on the self-defense, this is this is that sort of gray area where there was evidence. The jury was free to accept or reject on theft, on robbery or on the greatest offense, of course, of felony murder. And they well, they should have been anyways, but they didn't have that opportunity, given the fact that there was no instruction and no basis for us to advance any or counsel to advance any sort of argument like that in closing arguments. But if moving on, I think the next one issue I'd like to take up is seven point the pattern instruction seven point one five a causation in felony murder cases. And I think the place I'd like to jump into to start is just to highlight the state's argument, at least their primary argument, as I read it, is that foreseeability and proximate cause are only at issue when the death is caused by a third party outside of the criminal actors. We've said a lot in our brief about it, and I'm not going to rehash all of it, of course, but what I thought would be fruitful this afternoon is to focus on the text of the instruction itself. I think there's more. I have more to say about that. And turning to it, the first sentence, I won't just I'm not going to block with the whole thing. The first sentence effectively define Mr. Levitt. I'm curious why nobody in their briefs actually focuses on the text of the statute. Why do you go straight to instruction? Shouldn't we start with the statute itself? I think that's a fair point, and maybe that would have been a prudent course. I think the I don't think there's any dispute, though, that the instruction accurately encapsulates what is set forth in the statute itself. And obviously, this is kind of unique statute in the sense that there's been a ton of appellate review of it and scrutiny. And we all know the issues that the felony murder doctrine is presented and the attention it's gotten from our Supreme Court. So, the reason I guess I want to go to the instruction, too, is there's just the last sentence. There's a specific point. And I hope I don't know if that answers your question fully, but maybe that's a fair point. But anyways, the answer may be in that. The Supreme Court has made it clear that if the construction properly complies with the law, then the instruction should be given. And you don't go to the statute to decide how you're going to write the instruction as a judge. You give the instruction that's been given in the IPI. And I think that's probably why we're headed towards the instruction. Right. And we pointed out that there was no finding that it was inaccurate. And essentially, going through all the instructions, that was never the finding of the trial court. It was IPIs were refused on the ground that they were found to be confusing and things of that nature. And a lot of the language stating the law comes from Supreme Court cases. And what I did want to get to in the text of the instruction itself is that second sentence of it. The first one just sets out proximate cause in terms of foreseeability. The second one, and I'll read it sort of just absent the parentheticals and the brackets, it states it's immaterial whether the killing is intentional or accidental or committed by a confederate without the connivance of the defendant or committed by a third person trying to prevent the commission of the offense. And then fill in the blank. The point I want to that I was thinking about that I really want to emphasize and focus on is the first parenthetical where it talks about it's immaterial, whether it was committed by a confederate without the connivance of the defendant. So in the instruction, in the language of the instruction itself, setting out a bracketed portion where the facts of the case, if the sort of choose your own adventure analysis leads us down that path, there's situations in which it would be appropriate to give this instruction where the killing was committed by a confederate. And what it's saying is it's by saying connivance of the defendant, I read it as saying it's essentially limiting the analysis to foreseeability. It doesn't matter whether the defendant wanted it or intended it or condoned or anything like that. It just matters whether or not it's foreseeable. But the real bottom line point I want to make with this is it presumes the killing was carried out. 7.15a, the causation instruction has a bracket that presumes the killing was committed by a confederate. If that's not the case, you can go to the last one, which speaks separately of a third party, right? So if we follow the state's argument, if we follow the state's argument to its logical conclusion here, we might as well cross out that bracketed portion of the instruction, right? It would never be appropriate to give a causation instruction where the killing was committed by a confederate. Mr. Levitt, let me ask you, do I understand your position correctly that every felony murder case requires a 7.15a instruction? No, I would say no. I would say... So in other words, your position is that it's not an element, causation or foreseeability is not an element that the state is required to prove to establish felony murder? I think it's absolutely an element, but cases are... So if it's an element, then why is it not required in every single case? I would bring us back to the alibi example or the example where the fact pattern doesn't fit the giving of that instruction, right? There's cases where an element is just not disputed, potentially by agreement of the parties or potentially... Yeah, in such situations, it doesn't... I wouldn't make a blanket rule, and I don't think you have to make a blanket rule in this situation to find that. It's just whenever causation is in fact an issue, as we know. So your position is that because in this case, there is some evidence to support Mr. Abduck's position that he could not have foreseen that one of his confederates would have pulled out a gun and shot the victim, that it was appropriate to instruct the jury on the proximate cause. Instruction 7.15a. I think I agree with that statement, certainly based on the facts... And in other cases where it's not disputed, causation is not disputed, you're not required to give the 7.15a instruction. Is that fair to say? Whether it's best practices, I'm not advocating a blanket rule one way or the other. I mean, there's situations... Obviously, you said best practices, and I don't know what that really means. I'm just trying to figure out what the law requires. Sure. If I was going to say... What I mean by that is... I don't remember if it was the Eccles case, but one of the ones the state cited is a lot of times we know the standard for which we review jury instructions. And when the trial court... Should the trial court give a causation instruction if it's an element and etc.? Yes. I think that's a best practice. That's what I meant. But on review, if there's no objection, if the instructions as a whole accurately convey the full extent of the disputed issues, the ones that juries have to decide, is there going to be error or is there going to be plain error? That's a separate question. In this situation, we, I think, also should go back a little bit to Illinois Supreme Court Rule 451A. I don't think that's mentioned anywhere in the state's brief. But that, again, as Justice Walker, I think, was maybe touching on, that's a situation where our job in the trial court is kind of... It's expressed to us. If there's an instruction on a topic, on a disputed issue, and it accurately states the contrary, it must be given. So, that's where I land on that one, essentially. So, at this point... You've got about maybe two minutes left in your time. So, if you want to go ahead in your 15 minutes, if you want to get to the other issues, go ahead and do so. Okay. Well, I was going to ask if... Let me explore this issue about proximate cause a little further. Your position is, if I understand it correctly, that proximate cause is not an element of felony murder, but that if it is an issue raised by the defendant, then the 7.15A instruction should be given. So, if that's correct, then is it in the nature of some type of affirmative defense that you're saying? I am saying it's an element. I'm saying there's some situation in which you don't need a detailed elements instruction given to the jury, but I believe proximate cause is absolutely an element of the felony murder. Are there any other statutory schemes where a element, where the jury is not required to be instructed on an element of the offense? I can't think of... I guess what I'm struggling with is, it's an element or it's not. And if it's an element, then it should be given in all felony murder cases or not. I guess you're seeking a sort of middle ground and that's where I'm sort of struggling with the theory of logic. Sure. No, I follow you. And I think part of it stems from the fact that the statute is a little bit of a unicorn and peculiar. And the mental state, this is not common among most cases, right? Most we know it's knowing, intentional, whatever it is. There is a specific answer to your question that I have off the top of my head though, and that is not in the state system, but in federal court, healthcare fraud prosecutions under Title 18 United States Code Section 1347. I know off the top of my head, because I've argued this, there's one of the elements the federal government has to prove to prove healthcare fraud is that it involves theft from a federal healthcare benefit program. And there is actually a Seventh Circuit jury instruction that just essentially... That's an element that's been determined to be an element, but there's a separate instruction within the patterns that say when it's almost always Medicare, and it just says Medicare is in fact a healthcare benefit program. So same with the interstate nexus you see in federal prosecutions with gun cases and the like. So yes, I think there are absolutely situations where an element can more or less be stipulated out when they're not disputed. But whatever the broad point is, and I know that's what your honors have to grapple with, and that's part of your job, but mine is focusing on Mr. Optick and the facts of this case before us more than anything else. And this one, causation- Mr. Levitt, on page 38 of your brief, you cite People v. Nash, and you cited for the proposition that causation is an element of felony murder. That's correct. I believe so. I think I said I believe it is an element. Yeah. Justice Taylor asked you the question, and I know it's difficult when you're doing this, and you've got three people asking you questions, and you're trying to deal with all the issues all at once, but you answered the question that you were not sure if it were an element of felony murder. But that's what you're citing People v. Nash for, that proposition, that it is an element of felony murder. Right. Okay. That's fair. I mean, you're right. And at the same time, I mean, I'm trying to be fair and acknowledge there's, I think the Supreme Court's been consistent about that. I think there's been some confusion, and I'm not going to sit here and say the jurisprudence isn't a little bit muddied and unclear. And the reason I think that happens, just my take, is sometimes the causation and the mental state, there's overlap between foreseeability and intent, but they're not coextensive. And that's what the First Districts picked up on a lot of the cases the states cited to, talking about how it's a strict liability offense, et cetera. But of course, when someone intends something, it's generally foreseeable. But if they don't intend something, even though it doesn't matter, that still opens the door to foreseeability. So yes, to answer the question, it's our position that it's an element. Whether you need to give an instruction in any given case, I don't know. But certainly, Mr. Opticks, it should have been given. One final question. You may have cited People v. Mandeline. I don't recall. It's a Second District 2017 case. And in that case, the court determined that the 7.15a is only required in instances of third parties, in third-party felony murder. Is that the position you're staking out here, in line with the Mandeline case? That's the state's position, I believe, is that it only applies when it's third parties. They're drawing a distinction. I'm sorry. Yes, you're correct. So in other words, you disagree with Mandeline? I do. And I'll point out, I think it was DICTA in Mandeline, because that case involved the demendant directly committing an arson. Yeah, and that's on page 43 of the state's brief. I think we might have cited it, but they talked about it a little more as well. Okay. But with that, barring any other questions, I'll reserve for report. Okay. All right. Thank you, Mr. Levitt. Mr. Montague, we're on you now. You're up. Good afternoon. May it please the court, Assistant State's Attorney Noah Montague, on behalf of the people in this matter. Your Honors, this matter comes before the court after one person was murdered and another person was shot and severely injured in Skokie in 2014. The shooting happened during a drug deal. Mr. Montague, we know the facts. We'd rather you get to the argument. We're very familiar with the case. And all three of us know the facts really, really well. Okay. Getting to issue two, the jury instructions. Counsel didn't address any of the other issues. I don't know if you want me to address any of the other issues, but I'll start there. First, for 715A, foreseeability and felony murder, it is the state's position that this is not an element. And if you look at the case law cited by both the defense and the state, the case law is consistent that foreseeability is not an element unless the killing was done by a third party. And this is the classic example of you go in to rob a bank and the security guard shoots at the robbers and kills someone. Can you be liable for that? And then foreseeability becomes an issue in a felony murder case. But when there's not a third person outside of the criminal actors, foreseeability is not an issue and it is not an element of the offense and the trial court was proper in denying this instruction. Mr. Montague, where do I find that distinction in the felony murder statute? I don't believe it's in there, Your Honor. So this is just by way of judicial construction? Yes. Okay. And so your position is consistent with Mandeline and Hudson and Lowry is that it's only in third parties and it can never be brought up in the context of a co-felon? Well, I think counsel makes a good point about the actual text of the instruction itself, but the state's not aware of any examples of that happening. And the state's not aware of any case law dealing with that happening or a circumstance where it could happen. And this is a place where it's good to look at the Illinois Supreme Court case of People v. Kessler. Counsel, let me interrupt you. So what do you make of the fact that the law has since changed and that third party requirement is no longer there, no longer required? Your Honor, the state stands on Mandeline and the case of Seidon and the state's brief for that, the fact that the third party actor is still part of the equation. And I think it's important to consider the case of People v. Kessler, and Kessler, the defendant was sitting in a car when two co-defendants went into a bar unarmed to commit a robbery. While they were in the bar, they found a gun. And then with that gun that they found, they committed two attempt murders. And the defendant who was sitting in the car was charged, convicted of attempt murder. And the Illinois Supreme Court affirmed those convictions saying that it is strict liability. And that is the people's position here, that this is a strict liability issue. And that foreseeability is not an element and was not properly brought to the jury here in this case under these circumstances. And Kessler, was this foreseeability an issue on appeal? It was in the context of his beyond reasonable doubt argument. He argued that he could not have possibly foreseen that his co-defendants would find a gun. He argued that... Was there an argument about the instruction? No, it was not an argument about the instruction. So the facts are somewhat similar. You argue that your reliance on Kessler is based on a similarity to the facts. Is that correct? That's correct. And the court's ultimate ruling that it is strict liability and that it's simply the foreseeability or lack thereof did not impact the analysis. What the court found... So your argument here is going to be that in any instance where there's a co-felon or a confederate, the jury should never be instructed on foreseeability on 7.15a. I wouldn't say never, Your Honor. Presumably, there is... Okay, so let me follow up on that. Yes. Would you concede that there's some evidence in this record to support the defendant's argument that 7.15a should have been given to the jury? Your Honor, under the facts and circumstances of this case, it is the state's position that the trial court properly denied the instruction because there was a significant amount of evidence that the defendant knew and wanted that co-defendant to be armed. Well, so I understand that. That's certainly a conclusion that a jury could have come to. But there's also some evidence, it may not be particularly strong, but there's some evidence that Mr. Havdik did not know that his confederates had a gun brought a gun to the scene of the crime. And if the law is that there's some evidence that the jury should be instructed on the issue, then why is it not error to not have instructed the jury on 7.15a? Why? Because under Illinois law to this point, there has not been any case law that has a third party actor. You don't give the foreseeability instruction. So that means that it's really an agency theory, right? When you're talking about co-felons or confederates, it's an agency theory. But when you're talking about third parties, then it becomes a foreseeability theory. Is my understanding correct? I agree with that, Your Honor. So it's really a hybrid. Our felony murder statute, he says it's constructed by the courts, if I understand your argument, because it sets up a hybrid situation. Yes. Now, as far as the instruction of 2.01, the two instructions with robbery is a lesser included. The state's position is that this case was presented to the jury where the defendant was arguing that he committed theft and not robbery. And if you look at the defendant's reply brief, he's still arguing this litany of evidence that he cites in this long bullet point presentation in his reply brief. And all that evidence all consistently supports theft, not robbery. When I raised that issue with counsel, however, he said he argued both. It's the state's reading of the evidence that simply supports theft and not robbery. And the state would disagree with counsel on the point that it was an all or nothing defense, or that it was not an all or nothing defense, because they're simply under these facts, as presented by this case, was in the strict liability of the law at issue. There was simply no way to acquit this defendant of murder if he had committed robbery, especially under the facts of this case where common design was so clearly established by the text messages and the actions of the defendant. There was simply no way to acquit this defendant of felony murder. And at the same time, convict him of robbery. It was a strict liability offense. And it was clear that he was acting in a common design with this code. And based on that, there's simply no prejudice from not giving that instruction. And so there's no error. Would this court like the state to address any of the other issues? Sure, you can address whatever you choose. Okay, well, the state would simply, at this point, address issue five, beyond reasonable doubt. And I will keep it very succinct, as this court has stated that it's very familiar with the facts. But this is an important issue. Because obviously, if this court were to rule against the state on another issue, whether or not he was proven guilty beyond a reasonable doubt is very important. In the light most favorable to the state, it's also important to remember that the defendant's self-serving testimony that, oh, I didn't know there was a gun there and all that, is not considered. It's considered in the light most favorable to the state. So the conflicts in the evidence are resolved in the state's favor. And when you look at the evidence in the light most favorable to the state, the defendant here clearly had a common design to rob Jeanette with a gun, and the shooting was done in the furtherance of that robbery. Defendant planned the robbery. Defendant chose the victim. Defendant chose the proceeds of the robbery. Defendant ordered both Miles and Antonio out of the car. Not just Miles. He ordered both of them out of the car. Defendant openly planned to rob someone with a gun. And this is a point where Your Honor had asked if the defendant ever texted about a gun. And he did, in fact, text about a gun. Defendant said that he and someone else were going to rob a person with poles, obviously, and we've already discussed that pole means gun. So defendant was openly discussing robbing people at gunpoint in his text messages. And he was advised to bring a gun to this robbery. I asked that question earlier, Mr. Montague. And it's my understanding from that that he received a text from Jeremy regarding that. There were two text messages, Your Honor. But he never responded back to that text anything about a pole or a gun or anything else. There were two text messages that mentioned guns. There was one from Jeremy Lai saying, bring a pole to the robbery of Jeanette. And no, the defendant did not respond to that text message. And then there was another text from defendant saying that he and another person were going to rob someone with poles. So defendant himself was openly discussing robbing people at gunpoint of marijuana, which is exactly what happened in this case. Okay. And then how do you respond to the defendant's argument as to the cumulative effect of all of this, the causation instruction, the lesser included offense instruction and the 5.01 instruction? Do you want to respond to that? The issue for the cumulative error, I'm having trouble saying that word for some reason. The issue for the state is very cut and dried because what amounts to cumulative error in the state of Illinois is extreme. And this case was not extreme. There's simply no resemblance in this case to people versus blue. And cases, which there's only a couple of them, have found a pervasive pattern of unfair prejudice. There was no pervasive pattern in this case. There were simply a few trial issues. This is a simple cut and dried case where there were trial issues, there were disagreements, but it's not a pervasive pattern of unfair prejudice. There's no brain splattered cop's uniform being sent back to the jury room. This is not people versus blue and the state would ask this court to reject any blue. Let me just ask you this question. This may not even be an issue, but what do you believe is the harm in giving the lesser included offense instruction? I don't think there is a harm, Your Honor. I mean, as an appellate attorney, I would like it if courts, you know, did everything because that would make my job easier. But it's the court's job to give the instructions that fit the case and fit the trial that they're in. And it's important to remember, too, that this is an abuse of discretion standard and that the court here, as the state would argue, did not abuse its discretion. The court properly exercises discretion in granting or not granting certain instructions in this case. Mr. Montague, your time is probably coming to an end, but I did want to go back to 7.15a because I want to make sure I understand the state's position. Is it the state's position that 7.15a is not required to be given in felony murders involving or co-felon or confederate felony murder cases? Or is it the state's position that there may be instances where 7.15a is appropriate in a co-felon, a confederate felony murder case? Your Honor, it's the state's position that based upon the wording of the instruction, it is anticipated that there is some circumstance where the instruction could be given based on a co-defendant's actions. And the reason the state brings up the case of People v. Kessler is that it's hard to imagine what that circumstance would be because in Kessler, you have a case where foreseeability was so far off. They were unarmed when they went into the bar and they found a gun. But you acknowledge that the car was still guilty. But you acknowledge that the proximate cause instruction was not an issue in the Kessler case. That's correct. But the law was properly applied in Kessler. Well, then let's assume that as you acknowledge that there may be instances where 7.15a is appropriate in a felony murder case involving co-felons as opposed to a third party, your argument, just so I understand it, about why it need not have been given in this case is what? Is the strength of the evidence that the defendant knew and intended for that co-defendant to have a gun. So your position is that the trial judge can make a determination based on the strength of the evidence and decide not to instruct the jury on 7.15a, even though there might be some evidence to support that instruction, however weak? Your Honor, the state's position is that the court has to weigh the facts in order to make the decision and do it use its discretion in order to give or not give an instruction. And the court did that properly here. Well, let me just follow up on Justice Taylor's question, though, because I think it's a really good point here. Now, whose job is it to determine the strength of the evidence? Is it the job of the trier of the fact or is the job of the trial court judge? Is it the job of the jury or the trial or the trial court judge? It's the job of the jury, Your Honor. OK, all right. That's all I needed to ask you. You still have a minute left. Mr. Martin, we didn't want to cut you short if you want to use that minute. No, I don't need this minute. Thank you, Your Honor. OK, all right. Thank you. And now we'll come back to you, Mr. Levitt. You've got five minutes. Thank you. I'm going to try to pick up where we left off. And just one point about Kessler. I appreciate the questions. I would certainly have myself flagged the issue that it didn't deal with the instruction. And part of the reason Kessler didn't deal with the instruction is because it was from 1974. I didn't dust off my old IPI from that long ago. It was before I was born. But I think there's enough distinctions there. In any event, if the state is, as we just heard, is taking the position there may be fact patterns where it's appropriate if a confederate committed the killing, then this is absolutely the case. And I mean, I think it was really undersold to an extent how disputed the evidence was. And everyone is, of course, entitled to their different opinion. What actually happened here, and I have no doubt, Justice Walker, what you said about the facts earlier and your all's knowledge, but I do want to highlight that Antonio Hicks, the shooter, was everyone, all the state's witness testified that he was only Nicholas Smith's friend, the other guy who was hosting the barbecue. And so there was a mutual friend. And Mr. Robick never met Mr. Hicks before this day. Mr. Smith himself, who was the mutual connection, didn't even know Hicks to carry a gun all the time. He only carried it some of the time. He might have known he was carrying a gun that day because he said he was, quote unquote,  But in any event, Mr. Robick, of course, testified extensively about how he didn't know, as did Miles Hughes, the other co-defendant. And then the last factual point is Jeremy Lee and the other robberies. He got on the stand, too, and was a cooperating witness. And when they were talking about polls, he said it was all, I don't know, tough talk. It was all nonsense. It was not something that they ever did or actually contemplated. It was stupid, ignorant conversations that kids of this age sometimes have. So if there is a fact pattern, it is absolutely this one. So before I'm going to let you go on, but I just want to ask a question about this. I want to make sure we're reading the same version of IPI 7.158. It says here, and I'm going to start here in the middle, where it says it's immaterial whether the killing is intentional or accidental. And then the brackets we've talked about earlier, or committed by a confederate without the connivance of the defendant. So the instruction makes it clear that it should be given regardless of whether the crime was committed by a confederate or whether or not it's the defendant had anything to do with it, any wrongdoing involved. So why is it that you believe, because originally the trial judge said that she would give the instruction. And then she came back and said she had reviewed her notes and decided she was not going to give the instruction. What's the argument? What do you believe their argument is here as to why it shouldn't be given? Because the law is clear that where there's an IPI, and if the IPI properly tracks the that it should be given. And if the judge is not going to give it, the judge should state why. And I think in this case, the judge said it was confusing. And I don't know if that was the instruction. I think it was 5.01 that she said was confusing. It wasn't this one. She didn't say this one was confusing. She just said she wasn't giving it. Well, go ahead, respond to all of that. So my succinct answer is I believe there's no basis for the state's opinion to answer that specific question. I do have the, and I agree with how you read it. The court's comment on this one was, and the state cited it, it's on page 42 of their brief 1313 of the record. She said, I do not believe it is applicable in this case. I do not believe it will assist the jury in their deliberation. I believe the case of Hudson is on point. And there's additional issues when causation is an issue that are not here. Therefore, I do not believe it will assist the jury. I'm not going to allow that instruction. So I think following Rule 451, most significantly, that's not a basis to refuse a pattern. I think properly sensing that that was an appropriate basis, or maybe there's a better way to say it, a not sufficient basis to refuse the instruction, the states argued something different on appeal than what the trial court did, which they're allowed to. But I think for the reasons we've talked about and discussed, this distinction between third party actors, whether they're Confederates or outside whatever scheme or conspiracy, is not a valid one, as I think Justice Taylor's really getting at. It's not in the statute. And as I'm focused on, the opposite conclusion can be drawn from the sort of choose your own adventure language of the brackets. And then, of course, all the jurisprudence that went into that. OK, so barring any other questions, I would just ask your honors to, at a minimum, remand for a new trial. But just let me ask you this, too. And you may know the answer. And of course, I think I know the answer as well. This modified or updated IPI was actually written after the Mandeline case from the 2nd District. Mandeline, if I remember correctly, was 2017 or 18. This trial was late 2018. And then, of course, here we are briefing it and putting versions in the past couple of years or so.  OK. Mr. Levitt, let me just follow up on my questions that I asked Mr. Montague. If I understand him correctly, the state does acknowledge that there may be some instances where 7.15a is appropriate and should be given in the case of a co-felon felony murder. And that's your argument as well. And I guess my question to you is, what's the test? How do we determine when 7.15a should be given in a co-felon felony murder case? I think the best I can say is, number one, we go to Rule 451, as I've been harping on. There was no finding in there, nor could there have been, that it was inaccurate, et cetera, et cetera, and following the dictates of that. And then, of course, we turn to the evidence, which gets us back. We only have to have a slide showing. And as I've talked about, there's a ton. One, so I think those are the two things. The standards, is there slight evidence? And then if there's a pattern, we follow that checklist provided by 451. One other quick point I did want to hit, too, on the prejudice. I mean, these objections were preserved. So I don't think this isn't a point in your analysis, right? But there was significant prejudice. I mean, the defense was all about foreseeability throughout the course of the trial. So to not get an instruction and be able to argue it was huge. And then on top of it, one specific source of notice, the state took full advantage of it in their closing argument. They gave, and we talked about this in our reply, they gave the example of a bank robbery, just talking about the law as if there was no proximate cause or foreseeability analysis, and emphasized that to the jury. So for those reasons, I would again ask that your honors reverse the remand and grant Mr. Abduck a new trial. And final question. You acknowledge that 7.15a properly states the law, Mr. Levitt? That's our position, yes. And I'm sorry to go to you, Mr. Montague, but you acknowledge that as well? Yes, your honor. Thank you. I'm done. Anything further, Mr. Levitt? And thank you all for your time. Okay, and Mr. Levitt, Mr. Montague, excellent job. We appreciate your excellence. You all know the case very well. You all had an excellent oral argument on today, and we appreciate that. Have a good day.